**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| **LISA T. JACKSON** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **CIVIL ACTION** |
| | * | **NO.:  4:12-CV-0139** |
| **v.** | * | |
| | * | |
| **PAULA DEEN, PAULA DEEN** | * | |
| **ENTERPRISES, LLC, THE LADY &** | * | |
| **SONS, LLC, THE LADY** | * | |
| **ENTERPRISES, INC., EARL W.** | * | |
| **"BUBBA" HIERS, and UNCLE** | * | |
| **BUBBA'S SEAFOOD AND OYSTER** | * | |
| **HOUSE, INC.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' APPEAL TO THE ARTICLE III
JUDGE OF SECTION C OF THE MAGISTRATE'S ORDER DATED MAY 8, 2013
[DOC. 165] AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW PLAINTIFF, Lisa T. Jackson, and files this Plaintiff's Response to

Defendants' Appeal to the Article III Judge of Section C of the Magistrate's Order Dated May 8,

2013 [Doc. 165] and Incorporated Memorandum of Law, showing the Court as follows:

## I.      INTRODUCTION

Defendants have appealed from the Magistrate's Order [Doc. 165] denying their Motion

for Reconsideration [Doc. 135] of a prior discovery Order [Doc. 132].  The relevant provision of

the Federal Magistrate's Act, 28 U.S.C. § 636(b)(1)(A), implemented through Federal Rule of

Civil Procedure 72(a), permits a district judge to assign certain "non-dispositive" pretrial matters

to a magistrate  judge to "hear and decide."  Fed. R. Civ. P. 72(a).  The Rule provides that a

district court may only modify or vacate the Magistrate's Order [Doc. 165] to the extent that the

order "is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  A treatise on federal practice and procedure describes altering a magistrate's non-dispositive orders as "extremely difficult to justify." 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069 (2d ed. 2012).

Here, Defendants bear a doubly difficult burden.  Defendants never asked the District Judge to review the Magistrate's initial April 3, 2013 Order, at Doc. 132.  Their failure to timely file objections waives the right to have the district court review the April 3, 2013 Order itself. Thus, as discussed *infra*, for this Appeal, this Court is not reviewing the correctness *ab initio* of the Magistrate's April 3, 2013 Order, but rather whether the Magistrate erred in refusing to reconsider that Order in the Order of May 8, 2013 [Doc. 165].

In ruling on the Motion for Reconsideration, the legal standard is not the same as when the motions in question were initially filed, nor does this Court review the Motion for Reconsideration under the same standard.  Given that the prior Order of April 3, 2013 [Doc. 132] was not appealed, and given that no evidence was submitted to the Magistrate by Defendants on the issue now before the Court prior to the May 8, 2013 Order, the Magistrate was under no obligation to reconsider his factual determinations.  Further, the Motion for Reconsideration did not, in the principal brief, request the Magistrate to review that factual determination.  [Doc. 135, pp. 7-8]  In contrast, Defendants submitted evidence, in the form of the affidavit of Paula Deen, on the other issue decided by the Magistrate, which is not the subject of this Appeal.

As a result, in determining whether to reconsider his decision, the Magistrate reviewed his own prior Order for abuse of discretion.  *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1261 (11th Cir. 2008).  This Court, then, reviews the Magistrate's May 8, 2013 Order to determine if the Magistrate abused his discretion in refusing to revisit – on an abuse of discretion

2

standard – the prior Order, based on the record developed prior to the April 3, 2013 Order.  Thus, in order to vacate or modify the May 8, 2013 Order, this Court must accept as true the unchallenged factual findings in the unappealed April 3, 2013 Order and, on those facts, find that the Magistrate abused his discretion in refusing to find that he had earlier abused his discretion.  As demonstrated below, the Magistrate did not abuse his discretion and the Appeal must be denied.

## II.       STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.       A Preliminary Note Regarding Credibility and False Denials.

With high dudgeon, Defendants object that the Magistrate is requiring them to actually produce evidence which supports their claims of privilege, and they rely on evidence which contradicts their bland denials.  In this regard, perhaps, Defendants have only themselves to blame.  Defendants – and their counsel – have denied the truth of Plaintiff's claims, even where they were aware that these denials were false.  Some of these have been previously raised with the Court; more have been exposed with the recent deposition of Paula Deen.

In her deposition, Ms. Deen admitted (as alleged in the Second Amended Complaint [Doc. 47, Par. 21]), that, when firing a managerial employee, she stated:

> if you think I have worked this hard to lose everything because of a piece of pussy, you better think again.

[Video Dep., at 2:45:40 to 2:47:50; Doc. 47, Par. 21[1]]  Defendants had falsely denied that allegation.  [Doc. 56, Par. 21]  Ms. Deen further admitted (as alleged in the Second Amended Complaint [Doc. 47, Par. 34]), that she:

> stated that the Paula Deen Family of Companies was "one in the same business," stating further that "I owe just as much on this fucking restaurant, as I do on that fucking restaurant, so you need to work together."

---

[1] The referenced video deposition is filed separately via Notice of Filing dated May 30, 2013.

[Video Dep., at 2:51:20 to 2:51:50; Doc. 47, Par. 34]   Defendants had falsely denied this allegation.  [Doc. 56, Par. 34]

Defendants have, as with the present dispute, also proclaimed their innocence with regard to Ms. Deen's description of her ideal wedding for her brother and co-Defendant, which is described in the Second Amended Complaint, at Pars. 61-62.  [Doc. 47, Pars. 61-62]  While Ms. Deen continues to deny using the racial slur cited in Par. 62, she has admitted to the essence of the description:  She wanted a Southern "plantation style" wedding in which black servers would take on the role of slaves or servants in a sort of antebellum fantasy.  [Deen Video Dep., at 2:53:10 to 3:04:00]  She did not do so only because she knew that acting on this desire would subject her to accusations of racism (and no wonder).  [*Id*).]  Defendants, however, have proclaimed with the greatest indignation that this discussion never occurred, that the reference is "false, scandalous, and scurrilous" and is merely part of an effort to falsely impugn Ms. Deen. [Doc. 56, Pars. 61-62][2]

These false denials are signed by lawyers with the firm of Oliver Maner LLP, the same firm at which Mr. Gerard practices.  It is almost impossible to conclude that the denials were other than knowingly and deliberately false when they were filed with this Court.  When Defendants thunder that "Gerard testified on his oath and as an officer of the Court" [Doc. 153, p. 9], the Court should consider that Defendants – and their counsel – have repeatedly misrepresented the facts of this case, when filing pleadings which they signed in their role as officers of the Court.  As such, this Court should and must require them to support with admissible evidence *any* factual assertions they may make.

---

[2] Similar denials are found in Plaintiff's Response to Defendants' Emergency Motion to Exceed the Ten Deposition Limit, pp. 4-8 [Doc. 94, pp. 4-8], contrasted with the representations in their Motion [Doc. 85].

**B.      The Facts and Procedural History of This Motion.**

On February 24, 2013, Plaintiff filed her Motion to Compel discovery, which was a substitute for a Motion to Compel filed on February 19, 2013.  [Docs. 84, 92]  Plaintiff sought to compel documents which Defendants had withheld on a claim of attorney client privilege and attorney work product.  [*Id*.]  On February 25, 2013, Defendants filed a Motion for Protective Order and Motion to Quash Subpoena seeking to protect from discovery the same category of documents, i.e., those they were withholding on a claim of attorney client privilege and attorney work product.  [Doc. 93]

Defendants attached to their Motion three exhibits:  Exhibits A and B were copies of the subpoena served by Plaintiff for records in the possession of Oliver Maner LLP; Exhibit C constituted correspondence between counsel.  [Docs. 93-1 to 93-3]  Defendants did not file any affidavits or other evidence in support of the Motion which would support the contention that the records in question were protected from discovery.

Plaintiff filed a Motion to Compel essentially the same documents on March 7, 2013 [Doc. 111] and, after a consent extension of time [Doc. 114], filed Plaintiff's Response to Defendants' Motion for Protective Order and Motion to Quash Subpoena on March 15, 2013. [Doc. 116]  With her Motion to Compel, Plaintiff submitted excerpts of the "privilege logs" produced by Defendants, along with deposition testimony of numerous witnesses.  [Doc. 111] With her Response to Defendants' Motion for Protective Order and Motion to Quash Subpoena, Plaintiff filed additional evidentiary materials supporting her position.  [Doc. 116]   Plaintiff's evidentiary materials demonstrated that counsel for Defendants, in the person of Mr. James Gerard and Oliver Maner LLP, performed "human resources" functions for Defendants, in addition to any attorney representation they may have provided.

On April 3, 2013, the Magistrate denied Defendants' Motion for Protective Order and granted Plaintiff's Motion to Compel, as relevant to this Appeal.  [Doc. 132]  In that Order, the Magistrate found as fact that Mr. Gerard performed human resources functions, as a member of Defendants' management, in addition to serving as corporate counsel.  [Doc. 132, p. 25 n. 12 ("Jackson has also shown enough evidence that Gerard acted as management as much as he did corporate counsel when it came time to address employee complaints (Jackson's, primarily) about Hiers' conduct. *See* doc. 116 at 10-11, 14-15.")]  On April 4, 2013, Defendants moved for reconsideration of the Magistrate's Order, but, even then, did not produce any evidence which would call into question the Magistrate's finding of fact, quoted above, nor request the Magistrate to reconsider or revise that finding of fact.  [Doc. 135]  Plaintiff filed a response in opposition [Doc. 143] and Defendants filed a Reply.  [Doc. 153]  Defendants' Reply on the Motion for Reconsideration was the first time that they submitted evidence on the question of Mr. Gerard's performance of human resources functions on behalf of Defendants, although even then the evidence on that issue supported Plaintiff's position and the findings by the Magistrate.

Ironically, one of the documents that they withheld demonstrates both that Defendants have an overly broad notion of what is protected by the attorney client privilege and/or attorney work product *and* shows that Mr. Gerard's role was exactly as found by the Magistrate.  Attached hereto is an email produced from Karl Schumacher to Jim Gerard, copied to non-employee human resource consultants Tanya Mack, and David Beroset, which Defendants only produced in response to the Magistrate's Order.  In the email, dated June 25, 2010 (two months before Ms. Jackson's employment ended), Mr. Schumacher states to Mr. Gerard:

> "The HR consultants were in town this week.  Since you have been helping us in this area I suggested that they contact you."

See Exhibit A, attached hereto.  He goes on to state:

6

> "Some items that may need to be discussed is (sic) the employee manuals, past legal issues, our recent discussions and your thoughts and concerns."

*Id.*  It is clear that Mr. Gerard's role was much more than to advise Defendants on a "sporadic" basis and, as Mr. Schumacher put it, included "helping [] in [the Human Resources] area" on a wide range of issues.  *There is nothing about this email which implicates either the attorney client privilege or attorney work product, yet Defendants withheld it solely because Mr. Gerard's name was on it.*  Instead, the email clearly shows that Mr. Gerard's role extended beyond that of legal counsel, into the "fused" role found by the Magistrate, even without the benefit of this devastating piece of evidence.

On May 8, 2013, the Magistrate issued the Order subject to the present Appeal.  In that Order [Doc. 165], the Magistrate – in reliance on his own unappealed finding and the evidentiary record – reiterated his prior finding that Mr. Gerard played a human resources role.  This finding, as noted previously, was supported by the testimony of (among others) Mr. Gerard himself, who stated:

> Q.   Was there a complaint procedure within the company for -- at that time, to your knowledge, for bringing complaints of harassment or discrimination?
>
> A.   She usually complained to Mr. Schumacher as far as any complaints that she might have had with Mr. Hiers.
>
> Q.   And would Mr. Schumacher then keep you in the loop and inform you of those complaints?
>
> A.   Yes.

[Doc. 154, Exhibit A Gerard Dep., pp. 7-8]

Notwithstanding the procedural and factual posture of the Magistrate's Order, Defendants have rested this Appeal, in large part, on an effort to re-litigate that unappealed factual

determination.  [Doc. 171, at, *inter alia*, pp. 2-5, 7-9, 14-18, 20-21].  As they state, their Appeal

is based on the following contention:

> The Magistrate's Order is clearly erroneous in that it is premised upon the significant
> false premise of Mr. Gerard having an "HR management role" at the Defendant
> restaurants.  He does not.  The errant classification of Mr. Gerard as HR management
> opens all of the Defendants' attorney-client privileged communications with Mr.
> Gerard to discovery.

[Doc. 171, p. 9]  However, what they fail to recognize is that a challenge to that factual finding

by the Magistrate required them to file a timely appeal from the April 3, 2013 Order, not to wait

until after they have already had two (losing) bites at the proverbial apple and are seeking yet

another.

## III.    ARGUMENT AND CITATION OF AUTHORITY

There are, fundamentally, only two issues which the Court need consider in this Appeal.

First, whether the Magistrate's factual finding in the April 3, 2013 Order *can* be reviewed at this

juncture, given that Defendants did not challenge that factual determination within the time

limitations of Rule 72(a) and the Magistrate's Act.  Second, whether the Magistrate's factual

finding in the April 3, 2013 Order, and the resulting ineluctable finding of waiver, as reiterated in

the May 8, 2013 Order, *should* be reviewed by the District Court as being clearly erroneous or

contrary to law.  Although Plaintiff further addresses the *absence* of legal error, Defendants'

Appeal makes it clear that the Magistrate's factual findings defeat their Appeal.

"An abuse of discretion occurs if the [magistrate] fails to apply the proper legal standard

or to follow proper procedures in making the determination, or bases an award upon findings of

fact that are clearly erroneous." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1180 (11th Cir. 2005)

(quotations omitted). "A finding is 'clearly erroneous' when although there is evidence to support

it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68

S. Ct. 525, 92 L. Ed. 746 (1948). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *S.E.C. v. Kramer*, 778 F.Supp.2d 1320, 1326-27 (M.D. Fla. 2011) (quoting *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000)).

### A.    Review Of The Factual Findings In The April 3, 2013 Order Is Time Barred.

Defendants did not appeal the April 3, 2013 factual determinations.  Instead, they chose to seek reconsideration, in which Motion they also did not challenge the finding that Mr. Gerard – even though nominally outside counsel – provided human resources services to Defendants. As a result, they have waived the right to challenge those factual determinations, except for review for plain error or manifest injustice.  See *Farrow v. West*, 320 F.3d 1235, 1249 n. 21 (11th Cir. 2003) ("A party failing to appeal a magistrate judge's order in a nondispositive matter to the district court may not raise an objection to it on appeal to a circuit court."); see also *F.D.I.C. v. Hillcrest Associates*, 66 F.3d 566 (2d Cir. 1995) (failure to object timely to magistrate's non-dispositive report operates as waiver of any further judicial review of magistrate's decision).  Thus, the factual determinations made in the April 3, 2013 Order as to Mr. Gerard's "fused" role – which served as the basis for the May 8, 2013 Order -- must be accepted as correct and are not within the scope of this Court's review of the May 8, 2013 Order, absent plain error or manifest injustice.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982) (en banc). See *Dupree v. Warden*, 2013 U.S. App. LEXIS 9211, 24 Fla. L. Weekly Fed. C 242 (11th Cir. Ala. 2013).

Under plain error review, the party raising the issue has the burden to show that (1) there is error, (2) that is plain, (3) that affects a defendants' substantial rights, and (4) "not correcting

the error would seriously affect the fairness of the judicial proceeding." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999).  Defendants do not even attempt to meet this exacting standard.  They have not, even now, argued that the Magistrate committed plain error in his factual findings, as such an argument would be frivolous, given the testimony of the numerous witnesses of the role Mr. Gerard played in human resources matters.  Therefore, there is no basis for this Court to review the factual determination.

Defendants have recently highlighted the need to file an appeal from factual determinations made by a Magistrate Judge.  On May 22, 2013, they appealed from the Magistrate's finding that they (or their counsel) filed irrelevant materials with the sole purpose of embarrassing counsel for Plaintiff.  [Doc. 181]  On that issue, Defendants filed an appeal of the Magistrate's factual determinations, *even though they have no objection to the Magistrate's ultimate disposition of the question which those factual determinations support!*  In other words, the sole reason for filing the objections was to preserve the right to contest the Magistrate's factual findings, in any ancillary proceedings which may result.

With regard to the matter presently before the Court, however, Defendants did not appeal the factual determination on which the Magistrate's Order rests nor, for that matter, did they address the factual determination in their Motion for Reconsideration [Doc. 135].  The first time that they raised that issue or expressed any disagreement with the Magistrate's ruling was in their Reply on the Motion for Reconsideration [Doc. 153].  However, the law is clear that a Reply is not the place for new arguments.  See *Waddell v. Holiday Isle, LLC*, Civil Action 09-0040, 2009 U.S. Dist. LEXIS 67669, at *11-13 & n.5 (S.D. Ala. 2009) (collecting cases in support of the proposition that "[d]istrict courts. . . ordinarily should not consider arguments presented for the first time in a reply brief"); see also *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th

Cir. 2005) ("As we repeatedly have admonished, 'arguments raised for the first time in a reply brief are not properly before a reviewing court.'" (quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994))); *Autotech Techs. Ltd. P'ship v. AutomationDirect.com. Inc.*, 249 F.R.D. 530, 536 (N.D. Ill. 2008) ("Reply briefs are for replying, not for raising new arguments or arguments that could have been advanced in the opening brief.").   Thus, any objections Defendants may have as to the factual determinations in the April 3, 2013 were not properly raised, in a timely fashion, either to the Magistrate or to this Court.

###   B.   The Court Should *Not* Review The Magistrate's Finding, As It Was Correct.

Mr. Gerard served as Defendants' corporate counsel, upon whom Defendants called for a great many purposes, including when necessary, to chastise Mr. Hiers regarding his inappropriate work place behavior.  [Doc. 154, Exhibit C: Hiers Dep., pp. 59-61]  Ms. Jackson registered her complaints of sexual and racial discrimination with Mr. Gerard.   [Doc. 145, Exhibit B: Jackson Dep., pp. 163-168]  Defendants' own 30(b)(6) representative testified that the proper response to a complaint about Mr. Hiers would include contacting the attorneys, who he had previously identified as Mr. Gerard.  [Doc. 154, Exhibit G: Farmer 30(b)(6) Dep., pp. 35, 72-73]  In fact, Mr. Farmer, the companies' new and first Human Resources Director, *testified in his representative capacity* that Mr. Gerard would likely have played a role in the investigation of specific complaints made by Lisa Jackson.

Q.  Do you know who would have conducted the investigation?

A.  No.  I don't know for sure.  In my experience, my judgment it would be that it would have either been the assistance of the Mackworks consultants, or it was Karl, or it would have been Jim Gerard or at his direction.

[Doc. 154, Exhibit G: Farmer 30(b)(6) Dep., pp. 57-58)]  Mr. Gerard himself acknowledged that complaints regarding Mr. Hiers would be addressed to Karl Schumacher and, from Mr. Schumacher, would come to him.  [Doc. 154, Exhibit A: Gerard Dep., pp. 7-8]

This is a reflection of the fact that "modern corporate counsel have become involved in all facets of the enterprises for which they work.  As a consequence, in-house legal counsel participates in and renders decisions about business, technical, scientific, public relations, and advertising issues, as well as purely legal issues."  *In re Vioxx*, 501 F. Supp. 2d at 797.  As such, general "[b]usiness advice, unrelated to legal advice, is not protected by the privilege even though conveyed by an attorney to the client," because the purpose and intent is not to communicate legal advice.  *Id*. (quoting *In re CFS-Related Securities Fraud Litig.*, 223 F.R.D. 631 (N.D. Okla. 2004)).  It is clear from the deposition testimony that Mr. Gerard functioned in that capacity, even though he was not strictly "in-house counsel."

The Magistrate had before him, at the time of the April 3, 2013 ruling on this issue, the testimony of Mr. Hiers, Mr. Gerard, and Mr. Farmer in his capacity as Defendants' 30(b)(6) representative.  In denying Defendants' Motion for Reconsideration he also had the testimony of Plaintiff and her partner, Silla Summerlin.  [Doc. 153, p. 8]  This testimony supports the Magistrate's factual determinations, such that the factual determinations in the Order were clearly within the Magistrate's discretion to reach and, in fact, were correct determinations. Accordingly, this Court should not disturb the Magistrate's findings of fact.

      **C.**    **The Magistrate Did Not Commit Legal Error.**

With regard to the legal conclusions drawn by the Magistrate, no error has been shown. Contrary to Defendants' suggestion, the Magistrate did not rely on a free-standing conclusion that a party who demonstrates that materials are subject to the attorney client privilege could be

required to produce them merely on a showing of potential relevance.  What the Magistrate actually found was two-fold:  first, that the mere fact that one is an attorney does not *ipso facto* render every statement or act subject to the privilege and, second, that, even with respect to matters which are subject to the privilege, a party waives the privilege on all matters within the scope of the same subject matter on which the party deliberately and selectively waives the privilege for its own benefit.  [Doc. 132, p. 23]

The portion of the May 8, 2013 Order to which Defendants cite addresses the production of documents relating to Mr. Gerard's "fused" role as Human Resources advisor.  As the Court stated:

> In reply, defendants offer to stipulate away Gerard's trial testimony. Doc. 153 at 11. That dog won't hunt, however, since this case is not at the trial, but discovery stage, and his testimony is not in issue. What is in issue is what information can come from Gerard that may reasonably lead to evidence helpful to Jackson's case. She points out, in that regard, that defendants have cited to things like her May 2010 letter to Paula Deen -- to imply that she is fabricating or exaggerating her claims. See doc. 56 at 13-14 ¶ 102; doc. 109-4 at 1-2. Hence, discovering what Gerard -- **in his HR management role** -- did to address plaintiff's complaints before and after that letter is relevant to her interest in proving that she in fact is not fabricating or exaggerating her complaints.

[Doc. 165, pp. 28-30 (emphasis added)]  The Court went on to note that the reason that even privileged materials would be subject to production was that ***Defendants*** had interjected into the case defenses which required a full exploration of the entire subject matter on which they relied, including – as the Court stated – otherwise privileged materials.  [Doc. 162, pp. 29-30 n. 19 ("By definition, they injected into this case all of their HR responses, including Gerard's to the extent it is shown (and two witnesses say it occurred) he wore an "HR hat" in addition to an outside-counsel hat.")]  This is not error; it is black letter law.  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) ("The subject matter waiver doctrine provides that a party who

injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege loses that privilege.").

### 1.      Defendants failed to provide support for the claimed privileges.

As the Magistrate held in his Order, a party seeking to rely on the attorney client or attorney work product privileges has a burden to do more than argue about it:  that party must submit *evidence* to support the claims.  [*See* Doc. 165, pp. 31-32 n. 21, citing *Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 2012 WL 6430598 at * 3 (N.D. Ga. 2012)]   In this case, Defendants have failed to provide *any* evidence to support their claims of privilege in any respect.

Under the federal rules, a party is permitted to assert the attorney-client privilege to prevent certain otherwise discoverable information from being produced, as an "exception to the general rule that the law is entitled to every man's evidence."  *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 795 (E.D. La. 2007); see Fed. R. Civ. P. 26(b)(5). "The purpose of the attorney-client privilege is to encourage open and complete communication between a client and his attorney by eliminating the possibility of subsequent compelled disclosure of their confidential communications."  *In re Seroquel Prod. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 U.S. Dist. LEXIS 39467, 2008 WL 1995058, at *2 (M.D. Fla. 2008) (citing *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990)).  The privilege applies only to communications and does not extend to facts.  See *United States ex rel. Locey v. Drew Med., Inc.*, No. 6:06-cv-564-Orl-35KRS, 2009 U.S. Dist. LEXIS 5586, 2009 WL 88481, at *1 (M.D. Fla. 2009) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395-96, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)).

Because the attorney client privilege and attorney work product are exceptions to the general rule, courts narrowly construe the privilege and place the onus of proving its

applicability on the proponent.  See *In re Vioxx*, 501 F. Supp. 2d at 799 n.15; see also *In re Seroquel*, 2008 U.S. Dist. LEXIS 39467, 2008 WL 1995058, at * 2 ("The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential.").  It is settled law that the party claiming the privilege bears the burden of proving that the communications are protected." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998). The proponent of the privilege "must conclusively prove each element of the privilege."  *Id.* (quoting *SEC v. Gulf & Western Indus.*, 518 F. Supp. 675, 682 (D.D.C. 1981)). The attorney-client privilege applies when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b)without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Alexander v. FBI*, 2000 U.S. Dist. LEXIS 8857, Civ. No. 96-2123, Memorandum and Order at 4, n.2 (D.D.C. 2000); *Alexander v. FBI*, 186 F.R.D. 154, 161 (D.D.C. 1999) (citing *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)); (Doc. 165, p. 27 n. 17, citing *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990)).

Here, Defendants have not put on any evidence that the communications which they are still seeking to withhold were even made in the context of providing professional *legal* – as opposed to HR or business -- advice.  See *In re Lindsey*, 158 F.3d at 1270 ("Where one consults an attorney not as a lawyer but as a friend or a business adviser or banker, or negotiator . . . the consultation is not professional nor the statement privileged.") citing 1 MCCORMICK ON EVIDENCE § 88, at 322-24 (4th ed. 1992) (alteration in original).  Defendants did not offer

testimony from Mr. Gerard or any other witness regarding the role Mr. Gerard played with respect to the specific communications at issue and, accordingly, there is a failure of proof by Defendants on this initial point.  As a result, Defendants' claim of privilege fails irrespective of the question of waiver, as they failed to make any effort to meet their evidentiary burden.

Further, as noted above, Defendants have withheld emails – such as the June 25, 2010 email attached hereto as Exhibit A -- which  are not, under any circumstances, subject to any privilege, such that the Court cannot rely on Defendants' *claim* of privilege in the absence of *evidence* that the privilege applies.  See, e.g., *Alexander v. FBI*, 192 F.R.D. 23, Civ. No. 96-2123, Memorandum and Order of January 24, 2000 at 7-9 (rejecting President Clinton's claim of privilege based on his argument that answering the plaintiffs' questions would "necessarily reveal the contents of communications between 'privileged persons'"); *Belmont Holdings Corp. v. Suntrust Banks, Inc.,* 2012 U.S. Dist. LEXIS 181853, * 9-10 (N.D. Ga. 2012).   Because Defendants made no effort to prove that the communications in question were protected by the attorney client privilege, the Court should have no hesitation in finding that the Magistrate did *not* abuse his discretion in ordering the documents in question produced.

Because Defendants failed to present any evidence showing which (if any) of the withheld communications related to Mr. Gerard's involvement as counsel as opposed to as a member of management, they have failed to meet their burden.  This failure of proof must fall squarely on Defendants, who were the party who bore the burden of proving the applicability of the privilege before the Magistrate.  Thus, such investigations, communications, and memoranda would not even constitute work product or be a privileged communication.  *Fulton DeKalb Hosp. Auth. v. Miller & Billips*, 293 Ga. App. 601, 602 (1) (667 S.E.2d 455) (2008) (where investigation resulted from anonymous complaints to personnel department, as opposed "to any

claim or threat of litigation," investigatory material did not fall within work-product doctrine, even though lawyers participated in the investigation); *Atlantic Coast Line R. Co. v. Gause*, 116 Ga. App. 216, 223-224 (1967) (investigatory material generated during routine investigation conducted following an accident did not fall within work-product doctrine, even though investigation was conducted under direct supervision of attorney). As no privilege has been shown to apply, the Magistrate's determination that such materials are relevant and, therefore, must be produced is correct and clearly *not* an error of law in any respect.

### 2.    Defendants affirmatively waived any applicable privilege.

Even assuming that Defendants had met their initial burden to show that the communication and documents in question were, in fact, privileged, it is clear that they waived such privilege by injecting such matters into this case. Mr. Gerard's testimony has been offered by Defendants specifically to reveal matters which *Defendants* have asserted were covered by the attorney-client privilege and attorney work product doctrine, i.e., his participation in *actual* legal proceedings (an EEOC mediation) and his discussions with Defendants about such proceedings. Defendants chose to rely on Mr. Gerard to testify – selectively – about a portion of the information in his possession, yet to keep hidden the evidence necessary to show a full and complete picture of what actually occurred.

Discovery of the documents sought by Plaintiff is necessary to ensure that Defendants do not present a misleading picture through careful objections and instructions to Mr. Gerard as a witness. [See, e.g., Doc. 154, Exhibit A: Gerard Dep., pp. 26, 31-32] The documents in question – and Mr. Gerard's (or others') testimony about them are necessary to rebut the inferences Defendants would like the Court or jury to draw from his testimony regarding (a) the extent of the notice to the corporation of the tortious acts being committed by Mr. Hiers; (b) whether the

corporation responded negligently or with malicious disregard for the harm being caused to Plaintiff in violation of her rights under state and federal law; and (c) to ensure a complete presentation of Defendants' knowledge of and the explanation for the failure to act with regards to Plaintiff's complaints. Whether Mr. Gerard himself conducted the investigation of those complaints or simply passed the complaints along to others within the corporation or something in between is not the question; the question is what did Defendants know about Mr. Hiers' conduct and when did they know it.

As in *Belmont Holdings*, *supra*, Defendants have interjected into their pleadings assertions which make the foregoing conclusion clear, including a letter written by Ms. Jackson in May of 2010. [Doc. 56, Par. 102] They offer this evidence to support an inference that Ms. Jackson had neither experienced nor complained about sexual or racial harassment prior to that time or, for that matter, prior to the end of her employment. They have offered Mr. Gerard's testimony to the same end, but have carefully circumscribed it so as to present only the rosiest view possible of what they learned and when.[3]

However, fortunately for the notion that trials are supposed to be ultimately an effort to find the truth, Defendants have already presented sufficient testimony from Mr. Gerard – and stated their intention to rely on him at trial – to entirely waive any privilege regarding the subject matters of discrimination complaints, how complaints were handled, and, in short, all of the matters on which this Court Ordered production of records and testimony.

> A party waives the protections provided by the work-product doctrine and attorney-client privilege with regard to a protected subject matter where it selectively and intentionally introduces information and testimony into a litigation

---

[3] The fact that "the rosiest view possible" includes Mr. Hiers' viewing of pornography and use of racial slurs in the work place and that his response (regarding pornography) – when questioned by Mr. Gerard – was to blurt out a defensive "Don't you do that, too?" is merely the result of Defendants' inability to fathom that their employees do not have the luxury of simply walking away from Defendants' offensive conduct, as that would require these employees to walk away from the employment as well. [See Doc. 154, Exhibit A Gerard Dep., p. 14]

and "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." See Fed. R. Evid. 502(a); Fed. R. Evid. 502(a), Advisory Committee Notes; *Nobles*, 422 U.S. at 239-40; Cox, 17 F.3d at 1422 ("The subject-matter waiver doctrine provides that a party who injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege loses that privilege."); see also *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1327-28 (N.D. Ala. 2008) (quoting *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998)) ("[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.").

When a party elects to present testimony from its investigator "in a selective, misleading, and unfair manner," it also waives the protections afforded by the work-product doctrine and attorney-client privilege with respect to disclosed and undisclosed communications and information concerning the same subject matter as that testimony. See Fed. R. Evid. 502(a); Fed. R. Evid. 502(a), Advisory Committee Notes; *Nobles*, 422 U.S. at 239-40; Cox, 17 F.3d at 1422; *Kallas v. Carnival Corp.*, No. 06-20115-CIV, 2008 U.S. Dist. LEXIS 42299, 2008 WL 2222152, at *4 (S.D. Fla. May 27, 2008) ("[W]hen the party claiming the privilege  uses an investigator, or interviewer, as a witness and then attempts to prevent discovery of notes or other materials prepared by the investigator, or interviewer, on the subject of his or her testimony, it is settled that this waives the privilege.")….

Here, assuming the communications between Torres, Worms, and Plaintiff's counsel were protected, the Court finds that Plaintiff waived the protections provided by the work-product doctrine and attorney-client privilege regarding their investigators' knowledge and notes by intentionally and selectively introducing testimony by Torres and Worms in their pleadings during this litigation regarding (i) how the information in the Amended Complaint was collected, (ii) how it was communicated to Plaintiff's counsel, and (iii) what Plaintiff's investigators communicated to Plaintiff's counsel before the Amended Complaint was drafted.   This selective use of information by Plaintiff in connection with its efforts to oppose dismissal of the Amended Complaint and the imposition of sanctions urges the Court to conclude that "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." See Fed. R. Evid. 502(a); Fed. R. Evid. 502(a), Advisory Committee Notes; Nobles, 422 U.S. at 239-40; Cox, 17 F.3d at 1422.

*Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 2012 U.S. Dist. LEXIS 181853 (N.D. Ga. 2012).  On this question as well, the Magistrate did not abuse his discretion and, instead,

rendered a decision that was entirely correct on the facts and the law.

### III.   CONCLUSION

Defendants failed to appeal the factual findings in the April 3, 2013 Order of the Magistrate regarding the "fused" human resource and attorney role of Jim Gerard, and they seek through this belated Appeal to challenge those findings.  As a result of that failure to timely appeal, those findings must be accepted as correct and are not within the scope of review of the May 8, 2013 Order that Defendants have offered as the subject of this Appeal.  Moreover, substantial evidence was presented by Ms. Jackson demonstrating Mr. Gerard's human resource function within the Defendant companies and that evidence was before the Magistrate when he entered the April 3, 2013 Order.  On the record before him, the Magistrate's findings were correct determinations and not clearly erroneous.  Nor did the Magistrate commit any legal error in the May 8, 2013 Order.  Defendants failed to come forward with evidence supporting the privilege and work product protections they had the burden to demonstrate and, in fact, the evidence of record establishes that no such privileges existed.  If privilege and work product protections did exist, Defendants waived them by asserting defenses that place Mr. Gerard's conduct squarely in issue in this case.  Defendants' Appeal should be denied.

RESPECTFULLY SUBMITTED this day, May 30th, 2013.


                                        */s/ Matthew C. Billips*
                                        Matthew C. Billips, Esq.
                                        Georgia Bar No. 057110
                                        *Attorney for Plaintiff*

BILLIPS & BENJAMIN, LLP
One Tower Creek
3101 Towercreek Parkway, Suite 190
Atlanta, Georgia 30339
(770) 859-0753 (telephone)
(770) 859-0752 (facsimile)
Billips@bandblawyers.com

*/s/ S. Wesley Woolf*
S. WESLEY WOOLF
Georgia Bar No. 776175
*Attorney for Plaintiff*

S. WESLEY WOOLF, P.C.
408 East Bay Street
Savannah, Georgia  31401
T:  (912) 201-3696
F:  (912) 236-1884
woolf@woolflawfirm.net

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| LISA T. JACKSON | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | |
| | * | CIVIL ACTION NO.:  4:12-CV-0139 |
| PAULA DEEN, et al., | * | |
| | * | |
| **Defendants.** | * | |
| _____ | * | |

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing "Plaintiff's Response to Defendants' Appeal to the Article III Judge of Section C of the Magistrate's Order Dated May 8, 2013 [Doc. 165] and Incorporated Memorandum of Law" with the Clerk of the Court using the CM/ECF system, which will notify:

Thomas A. Withers
Gillen, Withers, & Lake, LLC
8 East Liberty Street
Savannah Georgia 31401

William F. Franklin, Jr.
I. Gregory Hodges
Patricia T. Paul
William Hunter
Georgia T. Major
218 W. State Street
Savannah, Georgia 31412

This 30th day of May, 2013.

/s/ S.Wesley Woolf
S. WESLEY WOOLF
Attorney for Plaintiff
Georgia Bar No. 776175

S. WESLEY WOOLF, P.C.
408 East Bay Street
Savannah, Georgia  31401
T:  (912) 201-3696
F:  (912) 236-1884
woolf@woolflawfirm.net