```
                                            FILED
                                      U.S. D[ST]       RT
                                        SA[       ]

         IN THE UNITED STATES DISTRICT COURT FOR
            THE SOUTHERN DISTRICT OF GEORGIA    2013 AUG 12  PM
                    SAVANNAH DIVISION
                                            CLERK
```

| | |
|---|---|
| LISA T. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CASE NO. CV412-139 |
| | ) |
| PAULA DEEN; PAULA DEEN ENTERPRISES, LLC; THE LADY & SONS, LLC; THE LADY ENTERPRISES, INC.; UNCLE BUBBA'S SEAFOOD AND OYSTER HOUSE, INC.; and EARL W. HIERS; | ) |
| | ) |
| Defendants. | ) |
| | ) |
| UNCLE BUBBA'S SEAFOOD AND OYSTER HOUSE, INC. and EARL W. HIERS, | ) |
| | ) |
| Counter Claimants, | ) |
| | ) |
| v. | ) |
| | ) |
| LISA T. JACKSON, | ) |
| | ) |
| Counter Defendant. | ) |

## O R D E R

Before the Court are Defendants Paula Deen, Paula Deen Enterprises, LLC, The Lady & Sons, LLC, and The Lady Enterprises, Inc.'s (Doc. 57) and Defendants Uncle Bubba's Seafood and Oyster House, Inc. and Earl W. Hiers's (Doc. 58) Motions to Dismiss. For the following reasons, Defendants' motions are **GRANTED IN PART** and Plaintiff's

claims under the Civil Rights Act of 1866, codified at 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964 for hostile work environment and disparate treatment based on racial discrimination are **DISMISSED**. The Court **RESERVES** ruling on the remainder of Defendants' Motions to Dismiss.

## BACKGROUND

This case involves allegations of both sexual harassment and racial discrimination by Plaintiff Lisa T. Jackson, a white, female employee of Defendant Uncle Bubba's Seafood and Oyster House, Inc. ("Uncle Bubba's").[1] Specifically, Plaintiff alleges that while she was employed by Defendant Uncle Bubba's, Defendant Hiers[2] subjected her to repeated "sexual harassment and discrimination, racial harassment and discrimination, and abusive treatment" over a period of five years. (Doc. 47 ¶ 19.) Plaintiff contends that, over this period of time, she made numerous and frequent complaints to various levels of corporate management, such as Defendant Paula Deen, Defendant Hiers,

---

[1] The Court accepts Plaintiff's allegations as true for the purposes of ruling on Defendants' Motions to Dismiss. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

[2] According to the complaint, Defendant Hiers owns 49% of Defendant Uncle Bubba's Seafood and Oyster House, Inc. (Doc. 47 ¶ 14.) The Court will refer to these two defendants collectively as Hiers Defendants.

the Chief Operations Officer and Director of Operations for Defendant Paula Deen Enterprises, the Certified Public Accountant for Deen Defendants,[3] and counsel for Defendants. (Id. ¶ 18.) According to Plaintiff, however, no action was taken to remedy the repeated discriminatory and harassing action by Defendant Hiers. (Id.)

Plaintiff began working as a hostess for Defendant Uncle Bubba's in February of 2005. (Id. ¶ 19.) In six months, Plaintiff was promoted to General Manager, a position she held until the end of her employment in August of 2010. (Id. ¶¶ 19-20.) Plaintiff contends that, during this time, she also worked directly for Defendants Paula Deen Enterprises and The Lady Enterprises, Inc. (Id. ¶¶ 27-28.)

In her complaint, Plaintiff describes the corporate management for Defendants as a " 'Boys [sic] Club' where men occupy management positions and women are not invited to take on substantial decision-making roles." (Id. ¶ 31.) She claims that she was denied additional promotion to positions for which she was qualified because the male managers "would never allow a woman to tell them what they need to do." (Id. ¶¶ 29-30.) After requesting a raise in

---

[3] The Court will refer to Defendants Paula Deen; Paula Deen Enterprises, LLC; The Lady & Sons, LLC; and the Lady Enterprises, Inc. collectively as Deen Defendants.

3

2007, Plaintiff was informed that Defendant Hiers "would not permit a woman to be paid any more than she was already paid." (Id. ¶ 38.) Further, Plaintiff contends that she was provided less compensation that her male counterparts. (Id. ¶ 43.)

Plaintiff also alleges that she was subjected to sexual harassment from Defendant Hiers on an almost daily basis during her five years of employment at Defendant Uncle Bubba's. (Id. ¶ 48.) She complains that Defendant Hiers frequently viewed pornography at work in a manner making it impossible for her to avoid, often requesting that they view it together. (Id. ¶ 49.) In addition, Plaintiff claims that Defendant Hiers regularly made "harassing and abusive comments" (id. ¶ 48), and related to her specific details from his visits to strip clubs (id. ¶ 51). For example, Defendant Hiers asked Plaintiff to bring him pictures of her when she was young (id. ¶ 50), told misogynistic sexual jokes (id. ¶¶ 52-54, 56), and commented on the waitresses being overweight (id. ¶ 50) and replacing them with Hooter's girls (id. ¶ 55).

In her complaint, Plaintiff also alleges that a "racially biased attitude prevailed throughout and pervaded Defendants' restaurant operations." (Id. ¶ 64.) Plaintiff contends that African-American staff were only permitted to

4

use the restaurant's rear entrance. Also, African-American employees were prohibited from using the customer restroom, which was available to white employees, and working as hostesses in the front of the restaurant. (Id. ¶¶ 66-70.) Finally, Plaintiff claims that Defendant Hiers repeatedly made racist jokes, often using n***** to refer to African-Americans. (Id. ¶¶ 71-72.) According to Plaintiff, these and other comments caused her to face "significant personnel management challenges." (Id. ¶ 75.)

In addition to these comments about African-American employees, Plaintiff alleges that Defendant Hiers stated Plaintiff's father, who was of Sicialian descent, "looks like a n*****" and questioned how Plaintiff looked so white. (Id. ¶ 73.) Also, Plaintiff relates that she was personally offended by the constant racist jokes and statements because she has biracial nieces. (Id. ¶ 78.) Finally, Plaintiff claims that the racist atmosphere in the workplace caused her "immense personal and work related emotional and physical distress" because "[e]mployees came to her to complain and for help, which she felt obligated to give but was unable to fully provide." (Id. ¶ 80.)

After receiving notice of her right to sue from the Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed her complaint in the Superior Court of Chatham

5

County, which was later removed to this Court. (Doc. 1.) Following removal, Plaintiff filed an amended complaint. (Doc. 47.) In this fifteen-count complaint, Plaintiff brings claims for negligent failure to prevent sexual and racial harassment in the workplace (id. ¶¶ 128-144), gross negligence and negligence per se (id. ¶¶ 145-157), intentional infliction of emotional distress (id. ¶¶ 158-161), assault (id. ¶¶ 162-165), battery (id. ¶¶ 166-169), hostile work environmental and racial discrimination under both the Civil Rights Act of 1866 (id. ¶¶ 170-175) and the Civil Rights Act of 1964 (id. ¶¶ 198-205, 214-221), disparate treatment under both the Civil Rights Act of 1866 (id. ¶¶ 176-182) and the Civil Rights Act of 1964 (id. ¶¶ 206-213, 222-228), ratification (id. ¶¶ 183-186), and breach of contract (id. ¶¶ 190-193). In response, Defendants filed their Motions to Dismiss. (Doc. 57; Doc. 58.)

In their motions, Defendants contend that Plaintiff lacks standing to pursue her racial discrimination claims because she does not allege that she suffered any discrimination because of her race. (Doc. 57 at 17-19; Doc. 58 at 16-31.) Defendants reason that neither Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-1 to 2000e-17, nor the Civil Rights Act of

6

1866 ("§ 1981"), 42 U.S.C. § 1981, permit an individual to bring claims against an employer for the alleged racial discrimination of a racial class to which the plainitff does not belong. (Doc. 58 at 16-20.) In her response, Plaintiff argues that racial discrimination claims may be brought by individuals outside of the discriminated class because the employer's conduct denies her right to associate in the workplace with persons of other races. (Doc. 66 at 17.)

## ANALYSIS

### I. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[4] "A

---

[4] Iqbal makes clear that Twombly has been the controlling standard on the interpretation of Federal Rule of Civil Procedure 8 in all cases since it was decided. Iqbal, 556 U.S. at 684 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8 . . . [that] in turn governs the pleading standard in all civil actions and proceedings in the United States district courts." (internal quotations and citations omitted)).

7

pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). For a claim to have facial plausibility, the plaintiff must plead factual content that " 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Plausibility does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557.) Additionally, a complaint is sufficient only if it gives " 'fair notice of what the . . . claim is and the grounds upon which it

8

rests.' " Sinaltrainal, 578 F.3d at 1268 (quoting Twombly, 550 U.S. at 555).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal, 578 F.3d 1252 at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal, 578 F.3d at 1268. That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545).

II. **PLAINTIFF'S STANDING TO BRING CLAIMS UNDER TITLE VII AND SECTION 1981**

Defendants argue that Plaintiff's racial discrimination claims do not come under the ambit of Title VII or § 1981[5] because she fails to allege that she was

---

[5] Analysis of racial discrimination claims under § 1981 mirrors that of Title VII. Bryant v. CEO DeKalb Cnty., 575

discriminated on the basis of her race, but instead claims that her fellow co-workers were subjected to racial harassment. (Doc. 58 at 16-19.) In response, Plaintiff contends that individuals whom have not been racially discriminated against may still bring racial discrimination claims under Title VII and § 1981. (Doc. 66 at 16-20.) In this regard, Plaintiff reasons that she has suffered an injury—interference with her interracial associations in the workplace—for which Title VII and § 1981 provide a remedy. (Id.)

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In a claim for disparate treatment, the employer takes some form of tangible employment action, such as termination or demotion, based on the race of the employee. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 (11th Cir. 2004). A claim for a hostile work environment is a form of disparate treatment where the employer's discriminatory actions improperly altered "the terms and conditions of

---

F.3d 1281, 1307 (11th Cir. 2009). Therefore, the Court need not discuss these claims separately.

10

employment, even though the employee is not discharged, demoted, or reassigned." Id. Title VII does not seek to impose a code of civility in the workplace. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798 (11th Cir. 2010). Therefore, not all profane or objectionable language constitutes discrimination under Title VII. Id.

Following the exhaustion of available administrative remedies, Title VII permits a "person claiming to be aggrieved" to file a civil complaint seeking damages for the discriminatory conduct. 42 U.S.C. § 2000e-5(f)(1)(A). In normal course, there is no question that the individual filing the complaint easily qualifies as a person claiming to be aggrieved: that individual, as a member of the protected class that the employer was discriminating against, was actually subjected to and suffered from the discriminatory conduct. Exceedingly rare, and equally problematic, is a plaintiff seeking damages for her employer's discriminatory behavior directed toward a class of individuals to which the plaintiff does not belong.

In Trafficante v. Metro. Life Ins. Co., 409 U.S. 205 (1972), the Supreme Court first attempted to define the scope of persons aggrieved under section 810(a) of the Civil Rights Act of 1968, 42 U.S.C. § 3610(a). That act permitted " '[a]ny person who claims to have been injured

11

by a discriminatory housing practice or who believes that he will be irrevocably injured by a discriminatory housing practice that is about to occur (hereafter 'personal aggrieved') [to] file a complaint with the Secretary.' " Trafficante, 409 U.S. at 207 n.1.[6] In Trafficante, one white tenant and one African-American tenant filed suit alleging that their landlord discriminated against nonwhites with respect to the rental of apartments. Id. at 206-07. The district court determined that the plaintiffs were not entitled to sue under that act because neither had been discriminated against by the landlord. Id. at 207.

Reversing the district court, the Supreme Court stated in dicta that allowing suit under the Civil Rights Act of 1964 by a person claiming to be aggrieved evidenced Congress's "intention to define standing as broadly as is permitted by Article III of the Constitution." Id. at 209 (quoting Hackett v. McGuire Bros., Inc., 445 F.2d 442 (3d Cir. 1971)). As a result, the Supreme Court concluded that the ability to allege any injury in fact by an individual plaintiff satisfies the requirement that the plaintiff be an aggrieved party. Id. at 209. Therefore, the plaintiffs

---

[6] The statute now reads that "[a]n aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred or terminated, file a complaint with the Secretary alleging such discriminatory housing practice." 42 U.S.C. § 3610(a)(1)(A)(i).

12

in Trafficante had standing to sue because the "exclusion of minority persons from the apartment complex is the loss of important benefits from interracial associations." Id. at 209-10.

Relying on this dicta, some Circuit Courts of Appeal developed lines of cases that permitted plaintiffs to pursue Title VII claims where the alleged discrimination caused any injury cognizable under Article III. See, e.g., Clayton v. White Hall Sch. Dist., 875 F.2d 676 (8th Cir. 1989); Stewart v. Hannon, 675 F.2d 846 (7th Cir. 1982); EEOC v. Miss. Coll., 626 F.2d 477 (5th Cir. 1980); EEOC v. Bailey Co., 563 F.2d 439 (6th Cir. 1977); Waites v. Heublein, Inc., 547 F.2d 466 (9th Cir. 1976). Generally, these cases relied on the language in Trafficante stating that the loss of interracial associations in housing was a sufficient injury to render an individual a party aggrieved despite the fact that they were not personally subjected to any racial discrimination. Based on this language, these courts determined that a plaintiff is injured when an employer's discrimination results in "the lost benefits of associating with persons of other racial groups." Clayton, 875 F.2d at 679. Utilizing the broad language employed in Trafficante, these courts conclude that the plaintiffs have suffered injuries sufficient to support a Title VII claim.

13

See Clayton, 875 F.2d at 679-80; Stewart, 675 F.2d at 846-50; Miss. Coll., 626 F.2d at 482-83; Bailey, 563 F.2d at 452-53; Waites, 547 F.2d at 469-70.

Recently, however, the Supreme Court has revisited the issue of standing in Title VII cases. See Thompson v. N. Am. Stainless, LP, ___ U.S. ___, 131 S. Ct. 863 (2011). In Thompson, the plaintiff sued his employer claiming that he was terminated because his fiancé filed an EEOC charge alleging sexual discrimination. 131 S. Ct. at 867. The district court dismissed his claim for lack of standing, concluding that Title VII did not permit retaliation claims brought by third parties. Id. The Sixth Circuit, sitting en banc, upheld that decision, concluding that the plaintiff was not within "the class of persons for whom Congress created a retaliation cause of action" because he did not "engag[e] in any statutorily protected activity." Thompson v. N. Am. Stainless, LP, 567 F.3d 804, 807-08 (6th Cir. 2011). In reversing the Sixth Circuit, the Supreme Court determined that the plaintiff did have standing to pursue his Title VII claim. Thompson, 131 S. Ct. at 869-70.

Importantly, the Supreme Court in Thompson rejected the notion that standing for Title VII claims is coextensive with standing under Article III. Id. at 869.

14

Citing the absurd consequences that would follow should "any person injured in the Article III sense by a Title VII violation" be permitted to file suit, the court noted that the Trafficante "dictum regarding Title VII was too expansive" and "ill-considered." Id. The Supreme Court declined to follow its earlier dicta, concluding that "that the term 'aggrieved' must be construed more narrowly than the outer boundaries of Article III." Id.

After scuttling the Article III standard, the Supreme Court applied a "zone of interest" test. Id. at 870. Under this regime, a plaintiff has standing to sue where he " 'falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.' " Id. (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883 (1990)). The test "den[ies] a right of review 'if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.' " Id. (quoting Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399-400, (1987)). A plaintiff has standing to sue if she possesses an interest that Congress arguably sought to protect when enacting Title VII, while excluding from suit "plaintiffs who might technically be injured in an Article

15

III sense but whose interests are unrelated to the statutory prohibitions in Title VII." Id. (quoting Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 495 (1998)).

Applying the zone of interest test, the Supreme Court concluded that the plaintiff had standing to sue because "the purpose of Title VII is to protect employees from their employers' unlawful actions." Id. Also, the plaintiff in Thompson was not an accidental victim of his employer's discriminatory acts, nor were his injuries collateral damage caused by the same unlawful acts. Id. Rather, "hurting [the plaintiff] was the unlawful act by which the employer punished [his fiancé]." Id.

In this case, the Court concludes that Plaintiff is not an aggrieved party under Title VII because her interests are not those arguably sought to be protected by that statute. See id. 869. At best, Plaintiff is an accidental victim of the alleged racial discrimination. There are no allegations that Defendant Hiers's racially offensive comments were either directed toward Plaintiff[7] or made with the intent to harass her.

---

[7] Plaintiff did allege that Defendant Hiers stated that her Sicilian father looked like a n*****. (Doc. 43 ¶ 58.) This single comment, however, is insufficient to support a claim under either Title VII or § 1981. First, it was a

Instead, Plaintiff contends that she suffered injury because Defendants deprived her of "harmonious working relationships with her African-American subordinates" (Doc. 43 ¶¶ 177, 216, 223) and denied her "the right to work free from racial harassment" (id. ¶ 224). Those, however, are not interests sought to be protected by Title VII. That statute seeks to prevent individuals from being discriminated against by their employers with respect to the terms and conditions of their employment. See 42 U.S.C. § 2000e-2. It does not operate to provide individuals working unaffected by unlawful racial discrimination with a cause of action to remedy racial discrimination directed toward third parties.

Even setting aside the absurd results that could follow from allowing such a claim, to use Title VII in this manner would serve to conscript federal courts as human resource departments that are responsible for imposing and monitoring a federally created standard for harmony in the workplace. Quite simply, workplace harmony is not an interest sought to be protected by Title VII. For these

---

single comment directed toward Plaintiff and is insufficient to give rise to a hostile work environment. See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (requiring offending conduct to be frequent to warrant liability under Title VII). Second, Plaintiff still fails to allege that she personally suffered any discrimination on account of her race.

reasons, Plaintiff's claims for hostile work environment and disparate treatment on the basis of race under Title VII do not state claims upon which relief can be granted and are due to be dismissed. Because the analytical framework of claims under § 1981 is indistinguishable, Plaintiff's claims under § 1981 must also be dismissed.

The cases Plaintiff relies on to support her position offer little to change this Court's conclusion that her Title VII and § 1981 claims should be dismissed. First, the majority of these cases relied on the language in Trafficante. See Clayton, 875 F.2d at 679-80; Stewart, 675 F.2d at 846-50; Miss. Coll., 626 F.2d at 482-83; Bailey, 563 F.2d at 452-53; Waites, 547 F.2d at 469-70. In addition, the district court cases Plaintiff cites were all decided prior to the Supreme Court's 2011 decision in Thompson. See Gravenda v. Orleans Cnty., 1998 WL 136122 (W.D.N.Y. Mar. 19, 1998) (unpublished); Faulk v. Home Oil Co., 173 F.R.D. 311 (M.D. Ala. 1997); Smithberg v. Merico, 575 F. Supp. 80 (C.D. Cal. 1983); Nat'l Org. for Women v. Sperry Rand Corp., 457 F. Supp. 1338 (D. Conn. 1978); Bert v. AK Steel Corp., 2008 WL 2002848 (S.D. Ohio May 7, 2008) (unpublished). As this Court discussed above, it is doubtful whether, in light of the Supreme Court's opinion in Thompson, the dicta in Trafficante can continue to

18

support the conclusion that Title VII and § 1981 permit a plaintiff to bring a claim for discrimination leveled against third parties.

Second, many of these cases involve actual discrimination against the Plaintiff. See Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572-78 (6th Cir. 2000) (finding white employee fired because of support for affirmative action could bring Title VII and § 1981 claims); Parr v. Woodsman of the World Life Ins. Co., 791 F.2d 888, 889-92 (11th Cir. 1986) (finding white plaintiff could bring Title VII and § 1981 claims where potential employer refused to hire him based on his interracial marriage). In this case, Plaintiff has not alleged that she was the target of unlawful discrimination. As Plaintiff neither suffered any adverse employment decision nor had any of the terms or conditions of her employment altered, these cases provide little support for her argument. While Plaintiff may have faced significant challenges in managing a workplace allegedly permeated with racial discrimination, her difficulties do not fall within the zone of interests sought to be protected by Title VII and cannot support a claim for racial discrimination under that statute.

## CONCLUSION

For the foregoing reasons, Defendants Paula Deen, Paula Deen Enterprises, LLC, The Lady & Sons, LLC, and The Lady Enterprises, Inc.'s (Doc. 57) and Defendants Uncle Bubba's Seafood and Oyster House, Inc. and Earl W. Hiers's (Doc. 58) Motions to Dismiss are **GRANTED IN PART** and Plaintiff's claims under the Civil Rights Act of 1866, codified at 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964 for hostile work environment and disparate treatment based on racial discrimination are **DISMISSED**. The Court **RESERVES** ruling on the remainder of Defendants' Motions to Dismiss.

SO ORDERED this 12th day of August 2013.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA